UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

KIM A. WRIGHT,
        Plaintiff,
v.

SPECIALIZED LOAN SERVICING,
        Defendant.
_____/

CASE NO.

DEMAND FOR JURY TRIAL

## COMPLAINT

Plaintiff, KIM A. WRIGHT (hereinafter "Ms. Wright"), brings this action to recover damages and equitable relief against Defendant, SPECIALIZED LOAN SERVICING, hereinafter "SLS", arising from the unlawful acts of Defendant in violation of the Telephone Consumer Protection Act of 1991, 47 U.S.C. §227, et seq. ("TCPA"), Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692 et seq, the Real Estate Settlement Procedures Act 12 C.F.R. part 1024.41(g), (Regulation X) and the Florida Consumer Collection Practices Act, §559.55, Fla. Stat. (2020) ("FCCPA"). In support of her claims, Plaintiff states as follows:

## JURISDICTION

**1.** This Court has jurisdiction over this matter pursuant to 47 U.S.C. §227; 28 U.S.C. §1331, 15 U.S.C. §1692k(d) and 12 C.F.R. 1024 (Regulation X). Supplemental jurisdiction for all state claims exists pursuant to 28 U.S.C. §1367. Venue is proper because the causes of action alleged herein accrued here in this District.

## PARTIES

**2.** Plaintiff, Ms. Wright, is a person residing in Duval County, Florida. Defendant, SLS, is a foreign corporation, is in the business of collecting on consumer debts in Florida. Its

principal office is located at 8742 Lucent Blvd, Highlands Ranch, CO 80129.

3. Defendant, SLS, regularly attempts to collect debts incurred for personal, family or household purposes from consumers in Florida. At all times relevant hereto, Defendant, SLS, was acting as a debt collector with respect to a consumer debt.

4. All conditions precedent to bringing this action have been satisfied, waived or excused. This action is timely filed.

### FACTS GIVING RISE TO RELIEF

5. On or about February 21st, 2020 Ms. Wright became aware of a foreclosure complaint that was filed and verified by a representative of SLS as the Attorney-in-Fact for The Bank of New York Mellon as Indenture Trustee for the CWHEQ Revolving Home Equity Loan Trus, Series 2007-A, case number 16-2020-CA-808 in Duval Circuit Court Jacksonville, Florida.

6. Shortly thereafter Ms. Wright sought representation for the Foreclosure case and retained the services of Stephen F. Albee on or about February 28th, 2020.

7. The Mr. Albee filed his notice of appearance, by way of Motion, on March 9th, 2020 in the foreclosure case and has represented Ms. Wright on that case ever since.

8. As SLS was the Attorney-in-Fact for the Plaintiff in the foreclosure case they were on notice that Ms. Wright was represented by Mr. Albee and the Defendant's attorney subsequently emailed Mr. Albee regarding his motion on March 10th, 2020.

9. Further, the Attorney for the Defendant and Mr. Albee have been in constant contact since that time.

10. SLS is the servicer/debt collector of a loan for Ms. Wright's homestead and routinely sent monthly statements to Ms. Wright over the course of the foreclosure case.

11. In addition, SLS would call the Defendant on her cellular/mobile phone and

business phone. One of the biggest complaints of the Defendant when she sought representation was that she was "sick and tired" of getting collection calls from the Defendant.

12. Once she retained an attorney she desired that these calls to her phones stop.

13. She subsequently, on advice of counsel, told the representative who called her cellular phone on March, 12th, 2020 that she had retained an attorney for this matter and to stop calling her.

14. The calls however, did not stop.

15. Ms. Wright continued to receive calls from the Defendant, (800) 268-xxxx, Subsequent calls were received on Ms. Wrights cell phone on, 26th, April 7th, 26th, June 10th, 20th and 22nd of 2020.

16. Ms Wright continued to express her frustration and all the while SLS ignored her pleas for cessation of the calls explaining that she had an attorney.

17. More calls came in, some were documented most were not.  Documented calls came in on Ms. Wright's cell phone on August 17th, 20th, 24th, 25th, 26th and 27th of 2020.

18. In addition to calling Ms. Wright's cell phone the Defendant routinely called Ms. Wright's business phone. Those calls came in on April 21st and 23rd,  May 6th and 13th and June 5th of 2020.

19. At all times relevant to this action Ms. Wright was represented by an attorney.

20. Ms. Wright is a small business owner who's business was severely affected by Covid-19.  She suffered financial difficulty over the past year.  In addition to the stress and disruption Covid caused, SLS's unlawful actions compounded those stressors.  Causing her a tremendous amount of stress, anger, loss of sleep and irritability particularly at a time when she didn't need those things.

21. The cell phone calls received at on her mobile phone were placed by Defendant using an automated dialing system as Ms. Wright routinely would answer the call only to hear a pause a click or two and then after a short delay someone would come on the phone asking for Ms. Wright advising they were calling from SLS and advising that the call was being recorded.

22. Despite Ms. Wright's notification that she was represented by an attorney, her attorney filing for her in court and her attorney communicating with Defendant's attorney she told them in no uncertain terms that she did not want SLS calling her anymore. Despite Ms. Wright's withdrawal of consent to contact her on her mobile and business phone the Defendant, SLS, continued to call Ms. Wright's mobile and business phones. Defendant most certainly has the records of the total number of times it called Ms. Wright.

23. Initially in seeking out representation, the Plaintiff's main goal was to avoid foreclosure by obtaining a loan modification for the Home Equity loan that the Defendant is servicing.

24. To that end the Plaintiff submitted a complete loss mitigation application to Defendant on August 12th, 2020.

25. Since that time the Defendant has called the Plaintiff's attorney advising the application was "under review". Additionally a letter was sent by the Defendant to the Plaintiff's attorney on November 16th, 2020 advising that the Defendant had received the application for loss mitigation assistance and that the application was "under review". See Plaintiff's Ex. A.

26. A representative of the Defendant named Rini contacted the attorney for the Plaintiff via telephone on numerous occasions advising that the Plaintiff's loss mitigation application was being reviewed.

27. Defendant's representative Rini contacted Mr. Albee last on March 18th, 2020

wherein she advised that the Defendant had made a loan modification offer. When Mr. Albee asked when that offer was made Rini advised that it was made the week before and was sent out to both Mr. Albee and Ms. Wright at her address and via email. Mr. Albee advised Rini that nothing had been received by his office either via Mail or email or otherwise. Rini checked to see if the Defendant had the correct email addresses and both (Plaintiff and Plaintiff's attorney) were verified during that call.

28. Mr. Albee contacted Ms. Wright on March 18th, 2020 asking if she had received anything via mail or email from the Defendant and she advised she had not.

29. As of the date of this complaint, neither Mr. Albee nor Ms. Wright have received anything regarding the Defendant's loan modification offer.

30. Meanwhile, in Duval Circuit Court, the attorney for the Defendant filed its Motion for Summary Judgment on March 16th, 2021, see Plaintiff's Ex. B, seeking a final Order of foreclosure from the court all while its representative is advising the Plaintiff and her attorney that the Defendant is offering a loan modification.

31. The Consumer Financial Protection Bureau, CFPB, has defined Dual Tracking as: "when the servicer moves forward with foreclosure while simultaneously working with the borrower to avoid foreclosure." See: https://files.consumerfinance.gov/f/201301_cfpb_servicing-fact-sheet.pdf

32. It appears the Defendant is engaged in Dual Tracking with the Defendant.

33. Defendant is subject to, and required to abide by, the laws of the United States and the State of Florida which include the *Telephone Consumer Protection Act of 1991*, 47 U.S.C. §227, et seq. ("TCPA") and its related regulations, including 47 C.F.R. §64.1200 ("TCPA Regulations"), as well as the opinions, regulations and orders issued by the Federal

Communications Commission to implement and enforce the TCPA, the *Florida Consumer Collection Practices Act* §559 Florida Statues, the *Fair Debt Collection Practices Act* 15 U.S.C. §1692 and *The Dodd-Frank Wall Street Reform and Consumer Protection Act* 12 U.S.C §2601 more specifically 12 C.F.R. §1024.41(g).

## Count I

### VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT

34. Plaintiff incorporates by reference and re-alleges each of the allegations contained in Paragraphs 5-23 of this complaint with the same force and vigor as if set out here in full.

35. The Defendant has placed numerous automated calls to Plaintiff's cell phone utilizing the Plaintiff's mobile number, despite being informed that the Plaintiff was represented by counsel and that she revoked consent to further contact her on her mobile number.

36. While the Plaintiff and Defendant have an established business relationship the Plaintiff revoked the right of the Defendant to contact her mobile number.

37. Defendant's method of contacting Plaintiff is indicative of its ability to dial numbers without any human intervention in the calling process, which is the hallmark of an automatic telephone dialing system (i.e. auto-dialer).

38. With each call placed to the Plaintiff's mobile number, Defendant violated 47 U.S.C. §227(b)(1)(A)(iii) of the Telephone Consumer Protection Act by making telephone calls to Plaintiff's cellular telephone, which were initiated by an automatic telephone dialing system and/or made using an artificial or prerecorded voice, and not legally permissible under any provision to the statute.

39. The Defendant was advised that they were to stop calling, yet they ignored this and continued to call the Plaintiff cell phone at the mobile number numerous times.

40. Defendant's actions were deliberate, willful and in complete disregard for the law.

**WHEREFORE**, Plaintiff requests this Court to enter a judgment against Defendant pursuant to the Act as follows:

a. Five-Hundred Dollars ($500.00) in statutory damages for each violation of the TCPA through unlawful calls made to Plaintiff's cell phone.

b. Fifteen-Hundred Dollars ($1,500.00) in statutory damages for each willful or knowing violation of the TCPA through unlawful calls made to Plaintiff's cell phone.

c. Award reasonable attorney's fees and court costs to Plaintiff.

d. A permanent injunction prohibiting Defendant from making non-emergency calls to Plaintiff 's cell phone at the Mobile # in violation of the TCPA; and

e. Grant such other and further relief as this Court deems equitable.

## COUNT II

## VOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT

41. Plaintiff incorporates by reference and realleges each of the allegations contained in Paragraphs 5-23 of this complaint with the same force and vigor as if set out here in full.

42. This action is for statutory damages pursuant 15 U.S.C. §1692(c)(a)(2). as a result of the Defendant's unlawful practice of attempting to collect on a consumer debt by continuing to contact a consumer knowing the consumer was represented by counsel.

43. Plaintiff is a consumer as defined by 15 U.S.C. §1692a(3).

44. Defendant is a debt collector as defined by 15 U.S.C. §1692a(6).

45. Defendant's violations of the FDCPA with regard to Ms. Wright include but are not limited to:

    a. causing her phone to ring or engaging any person in telephone conversation

  repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number;

  b. repeatedly calling the Plaintiff after being informed and with full knowledge Plaintiff was represented by counsel.

46. Plaintiff has been forced to retain the undersigned counsel and has promised to pay reasonable fees for those services. Defendant is liable for those fees pursuant to 15 U.S.C. §1692k.

**WHEREFORE**, Plaintiff requests the following relief:

a. A Judgment adjudging and declaring that the Defendant, SLS, violated the FDCPA by calling Ms. Wright numerous times in the collection of a debt knowing she was represented by an attorney;

b. A Judgment awarding Ms. Wright her actual damages;

c. A Judgment awarding statutory damages pursuant to 15 U.S.C. §1692k based upon Defendant's violation of the FDCPA;

d. A Judgment awarding costs of this action and reasonable attorneys' fees pursuant to 15 U.S.C. §1692k; and

e. Awarding Plaintiff such other and further relief as may be just and proper.

## COUNT III

## VIOLATION OF THE FLORIDA CONSUMER COLLECTIONS PROTECTION ACT

47. Plaintiff incorporates by reference and re-alleges each of the allegations contained in Paragraphs 5-23 of this complaint with the same force and vigor as if set out here in full.

48. This action is for statutory damages, declaratory and injunctive pursuant §559.55, Fla. Stat. et seq. as a result of the Defendant's unlawful practice of attempting to collect on alleged consumer debts by continuing to contact a consumer to attempt to collect on a debt knowing the consumer was represented by counsel.

49. Ms. Wright is consumer as defined by §559.55(2), Fla. Stat. (2020).

50. SLS is a debt collector as defined by §559.55(6), Fla. Stat. (2020).

51. Defendant's violation of the FCCPA includes, but is not limited to, claiming, attempting, or threatening to enforce a debt when such person knows that the debt is not legitimate or asserting the existence of some other legal right when such person knows that the right does not exist, in violation of §559.72(18), Fla. Stat. (2020).

52. Plaintiff has been forced to retain the undersigned counsel and has promised to pay reasonable fees for those services. Defendant is liable for those fees, as well as court costs, pursuant to §559.77, Fla. Stat. (2020).

**WHEREFORE**, Plaintiff requests the following relief:

a. A Judgment adjudging and declaring that the Defendant SLS violated the FCCPA by calling Ms. Wright numerous times in the collection of a debt, knowing she was represented by counsel;

b. A Judgment pursuant to the FCCPA enjoining Defendant SLS from any further contact with Plaintiff;

c. A Judgment awarding Plaintiff her actual damages;

d. A Judgment awarding statutory damages pursuant to §559.77, Fla. Stat. (2020) based upon Defendant's violation of the FCCPA;

e. A Judgment awarding costs of this action and reasonable attorneys' fees pursuant to §559.77, Fla. Stat. (2020); and

f. Awarding Plaintiff such other and further relief as may be just and proper.

## COUNT IV

## VIOLATION OF REAL ESTATE SETTLEMENT PROCEDURES ACT

53. Plaintiff incorporates by reference and re-alleges each of the allegations contained in Paragraphs 24-33 of this complaint with the same force and vigor as if set out here in full..

54. This action is for statutory damages, declaratory and injunctive pursuant 12 C.F.R. §1024.41(g) as a result of the Defendant's unlawful practice of dual-tracking by continuing to seek final judgment of foreclosure in state court while at the same time offering a loan modification.

55. Defendant is a servicer as defined in 12 C.F.R. §1024.2.

56. Plaintiff is a consumer and is a borrower as she is the signatory on both the Note and the Mortgage that the Defendant services.

57. On or about August 12th, 2020 the Plaintiff submitted to Defendant a completed loss mitigation application.

58. The Defendant acknowledged the receipt and processing of the application via letter dated November 16th, 2020 and subsequent email of February 16th, 2021.  (Ex.A)

59. The Defendant contacted the Plaintiff's attorney, Mr. Albee, on March 18th, 2021 to advise that the Defendant was offering the Plaintiff a loan modification.  However, no loan modification offer was ever received by the Plaintiff or her attorney either via email or by US Mail and no terms were discussed during the telephone call.

60. On March 16th, 2021 the Defendant's attorney filed its Motion for Summary Judgment in state court seeking a final order of foreclosure. (Ex. B)

61. The Defendant is engaged in Dual Tracking, specifically prohibited by law.

**WHEREFORE**, Plaintiff requests the following relief:

a. Judgment adjudging and declaring that the Defendant SLS violated the RESPA by

dual tracking her, having one representative make representations about her loan modification while another representative is in court seeking a final order of foreclosure.

      b.      Judgment pursuant to the RESPA enjoining Defendant SLS from any further action in state court.

      c.      A Judgment awarding Plaintiff her actual damages;

      d.      A Judgment awarding statutory damages pursuant to 12 U.S.C §2601 based upon Defendant's violation of the RESPA.

      e.      Awarding Plaintiff such other and further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Date: April 5, 2021

**RESPECTFULLY SUBMITTED**
**ESPENSHIP, SCHLAX & ALBEE, LLC**

*/s/ Sean A. Espenship*

Sean A. Espenship, Esquire / FBN: 128340
Stephen F. Albee Esquire / FBN: 979686
200 East Forsyth Street
Jacksonville, Florida 32202
Email: sean@esalawgroup.com
Tel: (904) 674-0717 Fax: (904) 674-0737
*Attorney for Defendant*